**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LORENZO ACOSTA, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>-against-<br><br>PRESTIGE MANAGEMENT INC.,<br><br>Defendant. | Case No.: 1:26-cv-20<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff LORENZO ACOSTA ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned attorneys, as and for his Class and Collective Action Complaint against Defendant PRESTIGE MANAGEMENT INC. ("Defendant"), states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 et seq. ("FLSA"), that he and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including overtime wages, (2) liquidated damages, and (3) attorneys' fees and costs.

2. Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 160, 190 et seq., the New York Codes, Rules and Regulations ("NYCRR"), 12 NYCRR § 142-2.2 and 12 NYCRR § 141 *et seq.*, that he and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including overtime wages, (2) statutory penalties for failure to provide proper wage notices and wage statements, (3) liquidated damages, and (4) attorneys' fees and costs.

3. Plaintiff further alleges, pursuant to the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"), that he is entitled to recover from Defendant: (1) compensatory damages for age discrimination and retaliation, (2) punitive damages, and (3) attorneys' fees and costs.

4. Defendant PRESTIGE MANAGEMENT INC. is a domestic business corporation organized under the laws of New York that operates and manages residential properties throughout New York City. Upon information and belief, Defendant manages over 50 buildings throughout the Bronx, Manhattan, and Brooklyn, including 65 commercial stores.

5. Plaintiff, putative collective members, and putative class members are current and former non-exempt employees, including live-in superintendents, handymen, and maintenance workers employed by Defendant at the various residential and commercial properties under its management. Defendant required Plaintiff, putative collective members, and putative class members to work scheduled hours exceeding forty hours per week, yet systematically failed to compensate them for all overtime hours worked. Specifically, Defendant required Plaintiff and similarly situated employees to work a regular schedule of forty-five hours per week but paid them for only forty hours, resulting in five unpaid overtime hours each week. Additionally, Defendant required Plaintiff and similarly situated employees to remain on-call beyond their regular schedule, work weekends and federal holidays, and perform additional tasks including painting and apartment renovations without proper compensation. On at least a dozen occasions, Defendant completely failed to compensate Plaintiff for overtime hours worked, including specific incidents where Plaintiff worked emergency weekend shifts, performed renovation work, and completed painting projects for which he was never paid despite explicit wage agreements. Similarly situated employees experienced similar failures to remit all owed payments.

6. Defendant's improper pay practices are designed to, and in fact do, result in a windfall of improperly retained unpaid compensation owed to Plaintiff, putative collective members, and putative class members.

7. Plaintiff alleges that Defendant failed to provide Plaintiff, putative collective members, and putative class members with accurate wage notices upon hire as required by NYLL § 195(1), and failed to furnish accurate wage statements on each payday as required by NYLL § 195(3). These violations obscured Defendant's wrongdoing and prevented employees from perceiving the extent and nature of Defendant's wage theft against them.

8. Plaintiff further alleges, on an individual basis, that Defendant retaliated against him in violation of NYLL § 215 for complaining in good faith that Defendant violated provisions of the NYLL by failing to pay him properly for his work. Defendant subjected Plaintiff to repeated harassment, false reprimands, and ultimately terminated his employment after he repeatedly requested payment for unpaid wages.

9. Additionally, Plaintiff further alleges, on an individual basis, that Defendant discriminated against him on the basis of his age in violation of the NYSHRL and NYCHRL. Defendant, through its agent Yessenia Santana-Starks, subjected Plaintiff to a hostile work environment through severe and pervasive age-based harassment, including derogatory comments such as "you're old" and "you're too old to do your job correctly," false write-ups, targeted reprimands, and ultimately terminated his employment after his return from approved vacation leave.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over

Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11. This Court has personal jurisdiction over this controversy as Defendant's headquarters are located at 1776 Eastchester Road, Suite 210, Bronx, New York 10461, and Defendant is a domestic business corporation organized under the laws of New York with its principal place of business in the Bronx, New York.

12. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) as Defendant resides in this judicial district and a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, including Defendant's headquarters and the properties where Plaintiff was employed.

## PARTIES

13. At all times relevant herein, Plaintiff was and is a resident of the State of New York, Kings County.

14. At all times relevant herein, Defendant PRESTIGE MANAGEMENT INC. was and is a domestic business corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at 1776 Eastchester Road, Suite 210, Bronx, NY 10461.

15. Defendant's business has branch locations throughout New York City, including at but not limited to the following locations (the "Complexes"):

a. 729 E 168th St, Bronx, NY

b. 3485 E Tremont Ave, Bronx, NY

c. 1200 Zerega Avenue, Bronx, NY

d. 145 W 127th St, New York, NY

e. 237 W 145th St, New York, NY

16. 239 W 145th St, New York, NY

17. 247 W 145th St, New York, NY
18. 12 Patchen Ave., Brooklyn, NY
19. 40 Putnam Ave, Brooklyn, NY

16. Upon information and belief, Defendant manages over 50 buildings throughout New York City, including 65 commercial stores.

17. All of Defendant's Complexes are managed by the same executive management team operating from the same headquarters, which sets standardized policies and managerial training. Further, each Complex is engaged in related activities, share common ownership, and have common business purposes.

18. Defendant PRESTIGE MANAGEMENT INC. sets payroll policies and provides paychecks to employees across all the Complexes, including Plaintiff.

19. Defendant PRESTIGE MANAGEMENT INC. hires, disciplines, and terminates superintendent employees across the Complexes, including Plaintiff.

20. Superintendents and other employees are assigned and reassigned internally between Defendant's Complexes at Defendant's discretion and on an as-needed basis.

21. Plaintiff himself performed work for Defendant at both 12 Patchen Ave. and 40 Putnam Ave.

22. Regardless of the primary complex to which employees are assigned, Defendant PRESTIGE MANAGEMENT INC.'s policies, pay practices, and timekeeping methods remain the same.

23. The Defendant engages in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that the employees of the Defendant handle goods and materials produced outside of New York (including tools, supplies, and other items) that have moved in interstate commerce, and the

Defendant is thus an employer subject to the jurisdiction of the FLSA.

24. At all relevant times, Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, State wage laws, and any regulations thereunder. At all relevant times, the work performed by Plaintiff and Class members was directly essential to the business operated by Defendant.

25. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

31. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees, including superintendents, handymen, and maintenance workers, employed by Defendant on or after the date that is three (3) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

32. At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all of which have culminated in a willful failure and refusal to pay Plaintiff and other FLSA Collective Plaintiffs for all hours worked, including overtime premiums at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek, due to Defendant's policies of failing to compensate employees for all overtime hours worked and maintaining uniform timekeeping practices that systematically underpaid overtime compensation. The claims of Plaintiff stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

33. The claims for relief are properly brought under and maintained as an opt-in

collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

**RULE 23 CLASS ACTION ALLEGATIONS**

34. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees, including superintendents, handymen, and maintenance workers, employed by Defendant on or after the date that is six (6) years two-hundred-and-twenty-eight (228) days (pursuant to NY's Executive Order tolling during the COVID pandemic), or the relevant statutory period of each state's applicable labor law, prior to the filing of the Complaint in this case (the "Class Members").

35. All said persons, including Plaintiff, is referred to herein as the "Class." The Class Members are readily ascertainable. The number and identities of the Class Members are determinable from the records of Defendant. The hours assigned and worked, the position held, and the rates of pay for each Class Member are also determinable from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under F.R.C.P. 23.

36. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, as the facts on which the calculation of that number rests are presently within the sole control of Defendant, there is no doubt that there are more than forty (40) members of the Class.

37. Plaintiff's claims are typical of those claims which could be alleged by any member

of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendant, as alleged herein, of: (i) failing to pay all wages, including overtime, for all hours worked in excess of forty hours per workweek; (ii) failing to provide wage and hour notices at date of hiring pursuant to NYLL § 195(1); and (iii) failing to provide proper wage statements on each payday pursuant to NYLL § 195(3).

38. Defendant's corporate-wide policies and practices affected all Class Members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

39. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

40. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the

wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

41. Defendant and other employers throughout the country violate state wage laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

42. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a. Whether Defendant employed Plaintiff and Class Members within the meaning of the state wage laws;

b. What were and are the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant did not pay Plaintiff and the Class Members;

c. At what common rate, or rates subject to common methods of calculation, was and is Defendant required to pay Plaintiff and Class Members for their work;

d. Whether Defendant properly notified Plaintiff and Class Members of their hourly

rate and overtime rate;

e. Whether Defendant properly compensated Plaintiff and Class Members for their hourly rate and overtime rate;

f. Whether Defendant paid Plaintiff and Class Members for the actual hours that they worked;

g. Whether Defendant provided wage and hour notices to Plaintiff and Class Members, at date of hiring, per requirements of the NYLL;

h. Whether Defendant provided proper wage statements to Plaintiff and Class Members per requirements of the NYLL;

## STATEMENT OF FACTS

*Plaintiff's Employment*

43. On or around November 19, 2018, Defendant hired Plaintiff to work as a live-in superintendent, handyman, and maintenance worker. Plaintiff continued to work for Defendant until September 20, 2024, when Defendant terminated his employment.

44. Plaintiff's primary workplace was at Defendant's apartment complex at 12 Patchen Ave., Brooklyn, NY. Plaintiff also performed repair and maintenance work for Defendant at another apartment building located at 40 Putnam Ave, Brooklyn, NY, 11238.

45. Plaintiff's primary duties included performing maintenance work, repairs, and cleaning within all apartment units and throughout the premises at 12 Patchen Ave.

46. Plaintiff received work assignments through in-person and phone conversations with his managers and through direct tenant requests. Plaintiff’s managers also faxed him work requests.

47. Starting at the beginning of his employment, Plaintiff was scheduled to work five days per week from 7:00 a.m. until 4:00 p.m., totaling forty-five hours weekly. At all times, Plaintiff worked hours in addition to his set schedule which went uncompensated.

48. Though Plaintiff was supposed to have an hour break each day, his breaks were

frequently interrupted. Plaintiff therefore should have been paid for these hours. However, Plaintiff was only paid for 40 hours per week. Plaintiff's break was interrupted with work orders at least three (3) times a week, resulting in at least three (3) unpaid overtime hours per week of his employment.

49. During Plaintiff's designated breaks, Property Manager Yessenia Santana-Starks would knock loudly, enter his office, and force him to take on work tasks, making statements like: "You're not doing anything right now." Santana-Starks would also call Plaintiff on the phone during his breaks to demand that he complete tasks. When Plaintiff would object, informing Santana-Starks that he was on a break, she would reply with dismissive comments such as: "I don't care, you work when I say you have to work." As a result, Plaintiff was not paid for this time.

50. Tenants also frequently came to Plaintiff's office to request work be done in their apartments, often also interrupting his break.

51. Though Plaintiff, at Defendants' explicit instruction, recorded clocking in and clocking out for an hour lunch on his handwritten timesheets, he was very rarely actually able to take an hour for lunch.

52. Throughout Plaintiff's employment with Defendant, Plaintiff was compensated at an hourly rate of $18.50 per hour.

53. Plaintiff was paid a gross weekly wage of approximately $740.00, covering only Plaintiff's first forty hours of work each week.

54. Plaintiff was instructed to report his scheduled hours for each week of his work, including for weeks in which he worked hours in excess of his schedule. Further, Defendants were aware of the mismatch between Plaintiff's scheduled hours and his actual hours as Defendants' managers would instruct Plaintiff and similarly situated employees to complete work orders during

lunch breaks, on weekends, and after his scheduled hours.

55. FLSA Collective Plaintiffs and Class Members were assigned similar schedules and like Plaintiff worked hours in excess of those schedules which were not compensated by Defendant.

56. FLSA Collective Plaintiffs and Class Members received similar hourly compensation rates and were subject to the same timekeeping and pay practices set by Defendant.

*Defendant's Unlawful Pay Practices*

53. Throughout Plaintiff's employment with Defendant, Defendant failed to pay Plaintiff entirely for 5 overtime hours each week starting from the beginning of his employment through his termination.

54. In September 2023, Yessenia Santana-Starks assumed the role of Senior Property Manager and became Plaintiff's direct supervisor.

55. Throughout Plaintiff's employment, and most recently under Santana-Starks' management, Defendant mandated Plaintiff remain on-call beyond 4:00 p.m. Plaintiff was thus required to work several additional hours past 4:00 p.m. to address emergencies, and Defendant also required him to work on weekends and federal holidays, which were previously designated as Plaintiff's days off. As these work emergencies would occur after hours, Defendant failed to compensate Plaintiff for this work.

56. Santana-Starks would call Plaintiff regarding work requests after 4:00 p.m. approximately once or twice each week.

57. Defendant also required Plaintiff to complete additional tasks between tenant occupancies, including painting and apartment renovations. Again, as this work was often performed outside Plaintiff's scheduled hours, Plaintiff was often not compensated for the time he

spent on these tasks.

58. Though Plaintiff's additional work hours varied weekly, Defendant consistently required Plaintiff to work an average of ten hours per week beyond his regular schedule, totaling at least fifty-five hours each week.

59. Of these overtime hours, Plaintiff estimates that he was completely unpaid for an average of two hours of work per week.

60. Defendant did not consistently pay Plaintiff at the legally required rate of one and one-half times his regular rate of pay for all hours worked beyond 40 per week, violating federal and state wage and hour laws.

61. Though Defendant did occasionally pay Plaintiff the correct overtime rate for additional hours spent on larger projects (e.g. full days of work on the weekend), much of Plaintiff’s work conducted outside his schedule of 40 hours went completely uncompensated.

62. On several occasions when Plaintiff sent in a timesheet which recorded more than 40 hours of work, Santana-Starks would refuse to pay him for the overtime. When Plaintiff followed up with her to complain and demand his full wages, she would dismiss his complaints with comments such as “No, I’m not paying you; I don’t have to give you a reason.”

63. FLSA Collective Plaintiffs and Class Members worked similar hours and were similarly subjected to Defendant's policies of failing to compensate employees for all overtime hours worked.

64. Defendant knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs, and Class Members for all hours worked, in violation of the FLSA and state wage laws.

65. Defendant knowingly and willfully operated their business with a policy of not

compensating Plaintiff, FLSA Collective Plaintiffs, and Class Members at the proper overtime premium rate for all hours worked, in violation of the FLSA and state wage laws.

*Specific Examples of Unpaid Work*

63. As an example of the above unpaid work, throughout his employment, Defendant required Plaintiff to perform additional construction, repair, or renovation work throughout its buildings, promising to pay Plaintiff additional wages in exchange for his labor. However, Defendant failed to pay Plaintiff for this extra work.

64. In September 2023, during a fire emergency at one of Defendant's Brooklyn complexes, Defendant required Plaintiff to work three consecutive Sundays.

65. During these days, Plaintiff assisted in relocating tenant furniture from the third floor to the first floor and cleaning debris.

66. Plaintiff was never paid for this work.

67. For the month of July 2024, Defendant required Plaintiff to work approximately six hours each on Saturdays and Sundays.

68. Subsequently, Plaintiff's manager informed him that Defendant had not approved his overtime work, and he was never paid for these hours, either.

69. In March 2024, Ms. Gloria, Plaintiff's manager at the time, demanded Plaintiff paint unit 3I in full by himself. Plaintiff agreed beforehand to complete this work for $1,000.00.

70. Upon successful completion of the job, Plaintiff demanded his wage payment; however, Defendant refused to pay Plaintiff his owed wage.

71. In July 2024, Santana-Starks demanded Plaintiff repaint one hundred and twenty-six doors throughout the building's premises.

72. Plaintiff agreed to paint each door for $20.00. Plaintiff painted these after his

normal work duties and outside his scheduled hours.

73. Upon successful completion of the entire job, Plaintiff requested his owed wage of $2,520.00. Santana-Starks refused to pay Plaintiff any of his promised wage for this work, despite Plaintiff's repeated follow-ups requesting payment.

76. These unpaid monies constitute unpaid "wages," or "earnings of an employee for labor or services rendered" as defined by the NYLL.

*Wage Notice and Statement Violations*

77. Defendant never provided Plaintiff with an accurate wage notice upon hire, nor with paystubs or wage statements on each pay day that accurately listed his actual hours worked during each week.

78. Though Defendant provided wage statements to Plaintiff, these statements failed to accurately document Plaintiff's overtime hours or overtime rate.

79. Defendant has thus failed to provide Plaintiff with the wage notice and statements required under NYLL § 195.

80. Plaintiff has thereby been harmed where Defendant has inaccurately reported his wages and paid him according to inaccurate documentation.

81. FLSA Collective Plaintiffs and Class Members similarly did not receive accurate wage notices upon hire, as required by NYLL § 195(1), and did not receive accurate wage statements on each payday, as required by NYLL § 195(3).

82. Defendant knowingly and willfully operated their business with a policy of not providing proper wage notices and statements as required by NYLL and other state wage laws.

*Age Discrimination and Retaliation*

83. Plaintiff complained to Defendant on several occasions that he was not being paid

correctly.

84. Plaintiff has repeatedly requested payment for work performed outside of his standard schedule from Santana-Starks, who has refused to pay him and retaliated against him as described below.

85. Santana-Starks frequently made derogatory remarks and rude comments directly to Plaintiff concerning his age, including telling Plaintiff: "you're old" and "you're too old to do your job correctly."

86. Santana-Starks frequently called Plaintiff into her office to speak with him about "not doing the job properly," despite Plaintiff performing his job correctly, as he would explain to Santana-Starks, and as building residents would independently verify.

87. These false and targeted reprimands occurred at least twice per week, and during some weeks, nearly every time Plaintiff worked in Santana-Starks' vicinity.

88. On many occasions, Santana-Starks unlawfully targeted Plaintiff for reprimand and specifically threatened to fire him "for not doing his job," despite Plaintiff performing his duties correctly and without evidence to the contrary.

89. During one incident when Santana-Starks called Plaintiff on his cell phone during his after-hours work, Plaintiff inadvertently referred to Santana-Starks by the wrong name.

90. Although Plaintiff immediately apologized, Santana-Starks threatened to fire Plaintiff for this minor infraction.

91. Santana-Starks targeted Plaintiff for such reprimands because of his age and his complaints regarding unpaid wages, creating an unlawful hostile work environment.

92. Plaintiff frequently requested Santana-Starks provide him with new tools or supplies necessary to adequately perform his job duties.

93. Santana-Starks refused and failed to process these requests.

94. Plaintiff specifically informed Santana-Starks that he lacked adequate supplies to perform his job duties and had to rely on receiving supplies from Defendant's other buildings to perform necessary repairs at his building.

95. Plaintiff informed Santana-Starks that her refusal to provide adequate tools caused him "a ton of stress" and inhibited his ability to perform his job duties efficiently.

96. In March 2024, Plaintiff's former manager approved his request for two weeks' vacation time.

97. In May 2024, Plaintiff received a paper copy of his vacation approval document.

98. In August 2024, two weeks before his approved vacation, Plaintiff approached Santana-Starks and reminded her of his upcoming leave.

99. Santana-Starks confirmed to Plaintiff that his leave "was approved in the Company's system."

100. On his last day before his approved leave, Plaintiff cleaned the entire building and documented his work with photographs.

101. Upon completion of his outstanding job duties, Plaintiff took his approved vacation from September 6, 2024, through September 18, 2024.

102. On September 18, 2024, the day Plaintiff returned to work, Santana-Starks approached Plaintiff and falsely claimed that he "took vacation without authorization."

103. Santana-Starks also incorrectly accused Plaintiff of "leaving the place a mess."

104. Plaintiff showed Santana-Starks photographic evidence proving he left the building in clean condition before departing for his approved vacation.

105. Santana-Starks yelled at Plaintiff in an overly aggressive and hostile manner,

refused to let Plaintiff speak, and informed Plaintiff that he was terminated effective immediately.

106. Defendant terminated Plaintiff on September 20, 2024, in retaliation for his complaints of being paid incorrectly.

107. Defendant further terminated Plaintiff as an act of discrimination on the basis of his age.

108. The temporal proximity between Plaintiff's protected complaints regarding unpaid wages and his termination on September 20, 2024, establishes a clear causal connection.

109. Defendant further retaliated against Plaintiff by knowingly turning off the electricity to his apartment on October 29, 2025, two days before he was scheduled to move out.

110. Plaintiff retained Joseph & Norinsberg LLC to represent him in this litigation and has agreed to pay the firm a reasonable fee for its services.

## FIRST CAUSE OF ACTION
## (FLSA Collective Action)

110. Plaintiff realleges and reavers each and every previous allegation as if fully set forth herein.

111. At all relevant times Plaintiff and the other FLSA Collective Plaintiffs were employees of the Defendant within the meaning of the FLSA, and were persons covered by and intended to benefit from the provisions of the FLSA.

112. At all relevant times the Defendant was an employer within the meaning of the FLSA and an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203.

113. As alleged herein, Plaintiff and the other FLSA Collective Plaintiffs regularly worked regular and overtime hours for Defendant for which they were not paid, in violation of the FLSA.

114. Defendant knew of and/or showed a willful disregard for the provisions of the

FLSA as evidenced by their failure to compensate Plaintiff and the other FLSA Collective Plaintiffs for all of the hours they worked, including overtime hours, when Defendant knew or should have known such was due.

115. Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the other FLSA Collective Plaintiffs for the proper overtime rate at one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours per workweek when Defendant knew or should have known such was due.

116. As a direct and proximate result of Defendant's willful disregard of the FLSA, Plaintiff and the other FLSA Collective Plaintiffs suffered damages in the form of unpaid regular and overtime wages. Plaintiff and the other FLSA Collective Plaintiffs seek judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interest, attorney's fees, and costs, as provided for under the FLSA.

**SECOND CAUSE OF ACTION**
**(NYLL Class Action)**

117. Plaintiff realleges and reavers each and every previous allegation as if fully set forth herein.

118. At all relevant times Plaintiff and the other Class members were employees of the Defendant within the meaning of the NYLL, and were persons covered by and intended to benefit from the provisions of the NYLL.

119. At all relevant times the Defendant was an employer within the meaning of the NYLL.

120. As alleged herein, Plaintiff and the other Class members regularly worked in excess of 40 hours per week, but were not paid all of the wages to which they were entitled under

the NYLL, including regular and overtime wages.

121. Defendant knew of and/or showed a willful disregard for the provisions of the NYLL as evidenced by their failure to compensate Plaintiff and the other Class Members for all of the hours they worked, including overtime hours, when Defendant knew or should have known such was due.

122. Defendant knew of and/or showed a willful disregard for the provisions of the NYLL as evidenced by their failure to compensate Plaintiff and the other Class Members for the proper overtime rate at one and one-half times their regular rate of pay, or one and one-half times the minimum wage rate, if greater, for all hours worked in excess of forty (40) hours per workweek when Defendant knew or should have known such was due.

123. Defendant also failed to provide Plaintiff and the other Class members with accurate wage statements and wage notices, as required under the NYLL.

124. Defendant knew of and/or showed a willful disregard for the provisions of the NYLL as evidenced by their failure to compensate Plaintiff and the other Class members for all of the hours they worked, including overtime hours, when Defendant knew or should have known such was due, and their failure to provide Plaintiff and the other Class members with accurate wage statements.

125. As a direct and proximate result of Defendant's willful disregard of the NYLL, Plaintiff and the other Class members suffered damages in the form of unpaid regular and overtime wages. Plaintiff and the other Class members seek judgment in an amount to be determined at trial for these damages as well as an award of statutory penalties, liquidated damages, interest, attorney's fees, and costs, as provided for under the NYLL.

## THIRD CAUSE OF ACTION
**(Retaliation in Violation of NYLL § 215)**

126. Plaintiff realleges and reavers each and every previous allegation as if fully set forth herein.

127. NYLL § 215 makes it unlawful for an employer to "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee" for complaining in good faith that their employer has violated any provision of the NYLL.

128. Plaintiff engaged in protected activity by repeatedly complaining to Defendant, including to Yessenia Santana-Starks, that he was not being paid correctly for his work in ways which violated the NYLL.

129. Specifically, Plaintiff repeatedly requested payment for work performed outside of his standard schedule and complained that Defendant failed to compensate him for overtime hours worked and for specific projects including the March 2024 painting of unit 3I for $1,000.00 and the July 2024 repainting of one hundred and twenty-six doors for $2,520.00.

130. Defendant, through its agent Yessenia Santana-Starks, subjected Plaintiff to adverse employment actions in response to his protected complaints, including repeated false reprimands, targeted harassment, and threats of termination. Defendant ultimately terminated Plaintiff's employment on September 20, 2024, and then maliciously shut off power to his apartment two days before he was scheduled to vacate.

131. There is a clear causal connection between Plaintiff's protected complaints regarding unpaid wages and Defendant's adverse employment actions, as evidenced by the temporal proximity and Santana-Starks' pattern of retaliation following Plaintiff's wage complaints.

132. As a direct and proximate result of Defendant's unlawful retaliation in violation of NYLL § 215, Plaintiff has suffered and continues to suffer damages including lost wages, severe

mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

133. Plaintiff is entitled to recover compensatory damages, liquidated damages, punitive damages, reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**(Failure to Furnish Proper Wage Statements in Violation of NYLL § 195(3))**

134. Plaintiff realleges and reavers each and every previous allegation as if fully set forth herein.

135. NYLL § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

136. Defendant is an employer within the meaning of the NYLL, and Plaintiff and Class Members are employees within the meaning of the NYLL.

137. As described above, Defendant, on each payday, failed to furnish Plaintiff and Class Members with accurate wage statements containing the criteria required under the NYLL.

138. Though Defendant provided wage statements to Plaintiff and Class Members, these statements failed to accurately document Plaintiff's and Class Members' actual hours worked, including overtime hours and overtime rates of pay.

139. Defendant thereby harmed Plaintiff and Class Members by obscuring its own wrongdoing and preventing its employees from perceiving the extent and nature of Defendant's wage theft against them.

140. Pursuant to NYLL § 198(1-d), Defendant is liable to Plaintiff and Class Members in the amount of $250.00 for each workday that the violations occurred, up to a statutory cap of

$5,000.00, plus costs and reasonable attorneys' fees.

**FIFTH CAUSE OF ACTION**
**(Failure to Furnish Proper Wage Notice in Violation of NYLL § 195(1))**

141. Plaintiff realleges and reavers each and every previous allegation as if fully set forth herein.

142. NYLL § 195(1) requires that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria, including the rate of pay, the basis thereof, and the regular pay day.

143. As described above, Defendant is an employer within the meaning of the NYLL, and Plaintiff and Class Members are employees within the meaning of the NYLL.

144. As also described above, Defendant failed to furnish Plaintiff and Class Members with any wage notice at hire, let alone one that accurately contained all of the criteria required under the NYLL.

145. Defendant thereby harmed Plaintiff and Class Members by obscuring its own wrongdoing and preventing its employees from perceiving the extent and nature of Defendant's wage theft against them.

146. Pursuant to NYLL § 198(1-b), Defendant is liable to Plaintiff and Class Members in the amount of $50.00 for each workday after the violations initially occurred, up to a statutory cap of $5,000.00, plus costs and reasonable attorneys' fees.

**SIXTH CAUSE OF ACTION**
**(Age Discrimination and Retaliation in Violation of NYSHRL)**

147. Plaintiff realleges and reavers each and every previous allegation as if fully set forth herein.

148. The NYSHRL prohibits discrimination in terms, conditions, and privileges of

employment based on an individual's age.

149. Plaintiff is a member of a protected class under the NYSHRL as an individual over the age of forty.

150. Plaintiff was qualified for his position as a live-in superintendent, handyman, and maintenance worker, as evidenced by his nearly six years of satisfactory performance from November 19, 2018, through September 20, 2024.

151. Defendant, through its agent Yessenia Santana-Starks, subjected Plaintiff to adverse employment actions, including repeated harassment, false reprimands, threats of termination, and ultimately termination of his employment on September 20, 2024.

152. These adverse employment actions occurred under circumstances giving rise to an inference of discrimination based on Plaintiff's age, including Santana-Starks' repeated derogatory age-related comments to Plaintiff such as "you're old" and "you're too old to do your job correctly."

153. Santana-Starks frequently called Plaintiff into her office to falsely accuse him of "not doing the job properly," despite Plaintiff performing his job correctly and building residents independently verifying his satisfactory performance.

154. These false and targeted reprimands occurred at least twice per week, and during some weeks, nearly every time Plaintiff worked in Santana-Starks' vicinity.

155. Santana-Starks unlawfully targeted Plaintiff for reprimand and specifically threatened to fire him "for not doing his job," despite Plaintiff performing his duties correctly and without evidence to the contrary.

156. The NYSHRL also prohibits retaliation against employees who complain about discrimination or other unlawful employment practices.

157. Plaintiff engaged in protected activity by repeatedly complaining to Defendant, including to Yessenia Santana-Starks, that he was not being paid correctly for his work in ways which violated the NYLL.

158. Defendant was aware of Plaintiff's protected activity, as Plaintiff made his complaints directly to Santana-Starks and other management personnel.

159. Defendant took adverse actions against Plaintiff, including repeated false reprimands, targeted harassment, threats of termination, and ultimately terminated his employment on September 20, 2024.

160. There is a clear causal connection between Plaintiff's protected complaints regarding unpaid wages and discrimination and Defendant's adverse employment actions, as evidenced by the temporal proximity and pattern of retaliation following Plaintiff's complaints.

161. As a direct and proximate result of Defendant's unlawful discriminatory and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered economic losses, including lost wages and benefits, and continues to suffer such losses, for which he is entitled to an award of monetary damages.

162. As a direct and proximate result of Defendant's conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

163. Defendant's conduct was willful, wanton, and malicious, entitling Plaintiff to an award of punitive damages.

**SEVENTH CAUSE OF ACTION**
**(Age Discrimination and Retaliation in Violation of NYCHRL)**

164. Plaintiff realleges and reavers each and every previous allegation as if fully set forth herein.

165. The NYCHRL prohibits discrimination in the terms, conditions, and privileges of employment based on an individual's age.

166. The NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible."

167. Plaintiff is a member of a protected class under the NYCHRL as an individual over the age of forty.

168. Defendant, through its agent Yessenia Santana-Starks, treated Plaintiff "less well" than other employees because of his age.

169. Santana-Starks subjected Plaintiff to a hostile work environment through severe and pervasive age-based harassment, including repeated derogatory comments such as "you're old" and "you're too old to do your job correctly."

170. Under the NYCHRL, the harassment itself constitutes a violation, as Defendant treated Plaintiff less well than other employees by subjecting him to age-based derogatory comments, false write-ups, and targeted reprimands that occurred at least twice per week.

171. Santana-Starks' conduct created a work environment that was inferior to that provided to other employees not in Plaintiff's protected class.

172. The NYCHRL also prohibits retaliation against employees who complain about discrimination or other unlawful employment practices.

173. Plaintiff engaged in protected activity by repeatedly complaining to Defendant, including to Yessenia Santana-Starks, that he was not being paid correctly for his work and by complaining about age-based discrimination.

174. Defendant took actions against Plaintiff, including repeated false reprimands, targeted harassment, threats of termination, and ultimately termination of his employment on September 20, 2024, that were "reasonably likely to deter" a person from engaging in protected activity.

175. The actions taken by Defendant through its agent Santana-Starks would deter a reasonable employee from complaining about unpaid wages or discrimination, given the escalating pattern of harassment, threats, and ultimate termination.

176. As a direct and proximate result of Defendant's unlawful discriminatory and retaliatory conduct in violation of the NYCHRL, Plaintiff is entitled to all available remedies under the NYCHRL.

177. Plaintiff has suffered economic losses, including back pay from the date of his termination through the present, and front pay for future lost earnings, for which he is entitled to an award of monetary damages.

178. As a direct and proximate result of Defendant's conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of compensatory damages.

179. Defendant's conduct was willful, wanton, and malicious, entitling Plaintiff to an award of punitive damages under the NYCHRL.

180. Plaintiff is entitled to recover reasonable attorneys' fees and costs incurred in prosecuting this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court assume jurisdiction herein and thereafter grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL, NYSHRL, and NYCHRL;

b. An injunction against Defendant and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

63. An award of unpaid wages, including overtime, due under the FLSA and NYLL;

64. An award of liquidated damages as a result of Defendant's willful failure to pay proper wages, including overtime compensation, pursuant to the FLSA and NYLL;

65. An award of statutory penalties as a result of Defendant's failure to comply with wage notice and wage statement requirements pursuant to NYLL §§ 195(1) and 195(3);

66. An award of compensatory damages for severe mental anguish and emotional distress, including depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering resulting from Defendant's age discrimination and retaliation;

67. An award of punitive damages as a result of Defendant's willful, wanton, and malicious conduct in violating the NYSHRL and NYCHRL;

68. An award of prejudgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees;

69. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

70. Designation of this action as a class action pursuant to F.R.C.P. 23;

71. Designation of Plaintiff as Representative of the Class;

72. Pre- and post-judgment interest;

73. Plaintiff's costs and reasonable attorney's fees; and

74. Such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

**NY BCL §630 NOTICE AND DEMAND**

Plaintiff hereby gives this notice, in writing, to each shareholder of Defendant, and any of its parents, subsidiaries, or affiliated entities that is served with the summons and complaint in this action, that they intend to hold the shareholders liable under New York Business Corporation Law § 630. This notice is given within one hundred and eighty days after termination of the employment services of Plaintiff.

Plaintiff also demands an examination of the record of shareholders under paragraph (b) of section 624 (Books and records; right of inspection, prima facie evidence) of New York Business and Corporation Law.

An action to enforce such liability shall be commenced within ninety days after the return of an execution unsatisfied against the corporation upon a judgment recovered against it for such services. The provisions of this paragraph shall not apply to an investment company registered as such under an act of congress entitled "Investment Company Act of 1940."

Dated: January 2, 2026
New York, New York

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

By: ______________________

Madeline Howard, Esq.
Diego Barros, Esq.
*Attorneys for Plaintiff and the Putative Class*
825 Third Avenue, Suite 2100
New York, New York 10022
(212) 227-5700
*madeline@employeejustice.com*